## Lee v. Beauchamp.

Opinion delivered December 5, 1927.

1. EVIDENCE—JUDICIAL NOTICE AS TO RATE OF INTEREST.—It is a matter of common knowledge that the amount of interest paid varies according to circumstances, among other things, the character of the loan, the kind and amount of security required, the time of the loan, and the general condition of the country at the time.

2. GUARDIAN AND WARD—LIABILITY OF CURATOR FOR INTEREST.—Under Crawford & Moses' Dig., §§ 5059-5061, 5066, making it a curator's duty to lend his ward's money, under order of the court, at the highest rate obtainable on unincumbered land, a curator is not liable for failure to keep money loaned at all times where the security offered is rejected by the probate court, if he has used reasonable care in trying to lend the money and in obtaining proper security therefor, and the curator was therefore not liable for any deficiency in interest because he deposited money in a bank at 4 per cent. interest, which was as high or higher than he would have obtained on government bonds.

3. GUARDIAN AND WARD—CARE IN HANDLING WARD'S FUNDS.—It is the duty of a guardian or curator to act, not only honestly, but with due care, in handling the funds of his ward, and, if he does not do so, the sureties become liable for interest on the money because of his negligence.

4. APPEAL AND ERROR—CONCLUSIVENESS OF COURT'S FINDINGS.—Findings of fact by the circuit court sitting as a jury are binding on the Supreme Court on appeal in the same manner and to the same extent as the verdict of the jury, and, if there is any substantial evidence to sustain the findings, they cannot be disturbed.

Appeal from Greene Circuit Court, First Division; G. E. Keck, Judge; affirmed.

Chas. Jacobson and M. P. Huddleston, for appellant.

Appellee pro se.

MEHAFFY, J. D. G. Beauchamp was appointed curator of the estate of Opal Josephine Lee, March 15,

1915, and did not file any settlement until after Opal Josephine Lee attained her majority. After she became of age she caused a citation to be issued, and on April 6, 1926, Beauchamp appeared and filed a settlement. The appellant filed exceptions to the settlement, and the court heard the cause on said exceptions, and found that Beauchamp was due his ward the sum of $1,136.04, instead of $794.80 as claimed in his settlement.

The case was appealed to the circuit court, where it was tried by the court sitting as a jury, and the circuit court overruled the exceptions, and approved Beauchamp's report as filed, and directed that the same be certified back to the probate court, there to be entered.

Motion for a new trial was filed and overruled, and exceptions saved and appeal taken to this court.

The settlement filed by Beauchamp is as follows:

"Comes the curator, and for his final settlement he charged himself:

| | |
|---|---:|
| With money received | $1,000.00 |
| Interest on $250 8 per cent. 1 yr. | 20.00 |
| Interest on $200 8 per cent. 10 yrs. | 160.00 |
| Interest on $790 4 per cent. 8 yrs. | 252.80 |
| Total received | $1,432.80 |

Takes credit with:

| | |
|---|---:|
| Amt. furnished John Hasley for books and clothes for ward | $ 30.00 |
| Costs in this court | 8.00 |
| Amt. paid ward after she became of age | 500.00 |
| Amt. of commissions to curator | 100.00 |
| Total paid | $638.00 |

RESTATEMENT.

| | |
|---|---:|
| Amount received | $1,432.80 |
| Amount paid out | 638.00 |
| Balance | $ 794.80 |

"Respectfully submitted,
"D. G. Beauchamp, Curator."

Opal Josephine Lee filed exceptions to the final settlement as follows:

"She excepts to item No. 1, which states that the sum of $250 was loaned for the space of one year at 8 per cent. per annum, and asks that said final settlement be made to show when said amount was loaned, to whom, and whether done under the direction and authority of the court.

"She excepts to item No. 2, which states that the sum of $200 was loaned for ten years at 8 per cent., the interest amounting to $160, for the reason that it is not shown when said amount was loaned, to whom loaned, and whether it was done under or by authority of the court, and fails to show whether the interest was payable annually, or when, and does not show whether the interest was reloaned, reinvested, or what became of it.

"She excepts to item No. 3, which is a loan of $790 at 4 per cent. interest per annum, for a period of eight years, interest thereon amounting to $252.80, for the reason said final settlement does not show to whom the money was loaned, when, and whether or not it was done under and by direction of the court, and does not show what became of the $252.80, whether it was reloaned, reinvested, or what was done with it.

"She further excepts to said final settlement, and says that the curator, D. G. Beauchamp, herein, has never furnished her, either directly or through her relative, John Hasley, any moneys for books or clothing, and excepts to the item charged of $30.

"She further excepts to the item of $8 for court costs, and asks that the curator be required to show what this amount was paid out for and how said costs were incurred in the management of said estate.

"She excepts further to the item of $100 charged by D. G. Beauchamp, curator, as commissions, for the reason that it is exorbitant and not in compliance with statute, and said commissions should be fixed by the court.

"She further excepts to said final settlement, and states to the court that, during the time her curator had

control and the management of her estate, by reasonable care and attention to said estate he could have loaned all of her said moneys to reliable and responsible persons, upon good approved real estate security, and all of the accumulations thereof, at 10 per cent. per annum, and that said final settlement shows on its face that the same has not been done.''

The probate court sustained the exceptions, and found that the curator was indebted to Opal Josephine Lee in the sum of $1,136.04. On appeal in the circuit court, where it was tried before the judge sitting as a jury, the exceptions were disallowed and the settlement as made by the curator approved.

The settlement, together with the exceptions, show the issues, and the evidence of the parties tends to support their respective claims.

At the close of the testimony the plaintiff moved the court to make a special finding of fact regarding the prevailing rate of interest in Greene County, Arkansas, during the time in controversy, and the court found that loans were made as high as 10 per cent. and as low as 6 per cent.—from 6 per cent. to 10 per cent.

The plaintiff excepted to the findings of fact by the court. The plaintiff then moved the court to make a special finding as to whether or not the curator acted with due care in the discharge of the duties of his office, and, in pursuance of this motion, the court found the facts with reference thereto to be as follows:

''I find in this case that the curator has handled this estate in a fair and equitable manner. I find that he has accounted for all moneys that came into his hands. I find that he was not guilty of negligence in failing to loan the funds; that he has handled this property with the same degree of care and attention that he handled his own private affairs, and that he should not be charged for any more than he actually received; that curator did not use any of these funds belonging to his, ward, personally, at any time, but at all times kept funds on hand in the bank in a separate account as curator. I find

exceptions to the report should be overruled; that he has handled this estate for the term of practically ten years; that his charge of $100 is not an excessive amount for the care, trouble and work that he had with reference to this estate. It is the judgment of the court that the exceptions be overruled and the report as filed approved. The curator now appears in open court and says that he desires to waive and relinquish all claims that he has made for fees and compensation, and asks the court not to allow him anything as compensation for his services in this matter, and, at his request, the report is amended to show that he does not claim or is not allowed any compensation for his services as curator.''

The plaintiff excepted to each finding of the court. Then the plaintiff moved the court to make a special finding of fact regarding the amount of interest the curator would be liable for in the event he did not exercise due care in the performance of the duties of his office, and in answer to this the court finds that, if he had been guilty of negligence and failed to exercise proper care, he would be liable for 6 per cent. interest compounded annually. To this finding the plaintiff also excepted.

In plaintiff's motion for a new trial it is stated that the court erred in its finding as to the amount of interest the defendant would be liable for upon failure to exercise ordinary care in the performance of his duties, adopting 6 per cent. interest, compounded annually, whereas all the evidence shows that the lowest rate of interest in loans of the character which the law required defendant to make was not less than 8 per cent. If there is any such evidence in the record, it is not abstracted by the appellant, and we have failed to find it in the transcript.

The appellant's first contention is that the current rate of interest is a part of the history of the State, of which the courts will take judicial notice, and refers to numbers of authorities sustaining the contention.

The lower court, while the record does not show this specifically, probably found that the prevailing rate of interest on loans like the curator would have had to make

and demanding such security as the law requires, would have been 6 per cent. The record does not show what he found, except that loans and 'been made in that section from 6 per cent. to 10 per cent. But it is a matter of common knowledge that the amount of interest paid varies according to circumstances, and that many things must be considered; among other things, the character of the loan, the kind and amount of security required, the time of the loan, as well as the general condition of the country at the time.

Appellant says the measure of appellee's duty, as fixed by law, is found in § 5059 of Crawford & Moses' Digest, which reads as follows:

"If, at any time, any guardian shall have on hand any money belonging to his ward, beyond what may be necessary for his education and maintenance, such guardian shall, under the direction of the court, loan the same to such person as will give good security therefor, and such money shall be loaned on such time as the court shall direct."

And § 5060, which is as follows:

"If any guardian shall fail to loan the money of his ward on hand as aforesaid, under provisions of this act, he shall be accountable for the interest thereon."

Section 5061 provides:

"Guardians and curators shall loan the money of their wards at the highest rate of interest prevailing in the community that can be obtained on unincumbered real estate security, and then not more than to the extent of one-half the value thereon. The interest in all cases shall be paid annually, and, if not then paid, shall become a part of the principal and bear interest at the same rate."

It will be observed that the statute does not require the curator to loan the money at the highest rate of interest prevailing in the community, but at the highest rate prevailing in the community that can be obtained on unincumbered real estate security where the loan shall not exceed one-half the value of the real estate.

Another provision in the law is that, if the interest is not paid annually, it becomes a part of the principal and bears the same rate of interest that the principal loan does. But the testimony in this case shows that, on one or two occasions where the curator had found a borrower, the court declined to approve the security. The money had to be loaned under the direction of the court, and, if the court refused to direct the loan or declined to approve the security, then the curator was helpless so far as that loan was concerned.

There is no question about the law nor about the duty of the curator under the law. We think the undisputed proof shows that the curator acted in good faith. In fact, there is no contention that he at any time used any of the money, but the only contention is that he did not lend it out at the prevailing rate of interest and keep it loaned out during the whole time. If the curator would not be responsible for any money loaned under the direction of the court, he would certainly not be liable for failure to make a loan where the security offered was rejected by the court, if he used reasonable care in trying to lend the money and in obtaining proper security therefor.

Section 5066 of Crawford & Moses' Digest, after prescribing the duties of the guardian with reference to loans and the liability on the bond, says:

"And, if such money has not been loaned out, the court shall order the money to be forthwith invested in United States bonds for the use and benefit of such ward, and it shall remain so invested until such court shall order otherwise, and a report of the action of such guardian or curator shall be made of his proceedings."

It will therefore be seen that situations like this were anticipated by the legislators when they enacted this law. If the money could not be loaned out on security acceptable to the probate court, then, of course, the curator could not lend it. He would be violating his duty under the law if he loaned it against the orders and directions of the court, or in cases where the court declined

to approve the loan. But, when that situation arose, then it became the duty, not of the curator, but of the court, to order the money to be forthwith invested in United States bonds. There is nothing in the record to indicate that the court made any such order. Instead of purchasing United States bonds, which the curator would have been required to do if directed to do so by the court, he deposited the money in the bank at 4 per cent. interest. This was as high, or probably higher rate of interest than would have been obtained if the funds had been invested in United States bonds.

If the funds had been invested in United States bonds the interest would have been paid at maturity, but there would have been no compounding of interest. It is certainly the duty of a guardian or curator to act not only honestly but with due care in handling the funds of his ward, and, if he does not do so, he and his sureties become liable for interest on the money because of his negligence. But whether he has done so or not is a question of fact, and the circuit court sitting as a jury was requested to make and did make special findings of fact, and the findings on questions of fact by a court sitting as a jury are binding on this court in the same manner and to the same extent as the verdict of a jury, and, if there is any substantial evidence to sustain the findings, this court cannot disturb them.

It appears that this case was fairly submitted to the court, and that his findings are sustained by the evidence. In addition to this, the appellee in open court waived and relinquished all claims for fees and compensation, and asked the court not to allow him anything for his services, and, at his request, report was amended to show that he did not claim and was not allowed any compensation for his services as curator.

When the findings of fact by the court and this action on the part of the curator, and the further fact that the guardian or curator is entitled to such compensation for his services as the court shall decide to be just and rea-

sonable, are considered, this court would not be authorized in setting aside these findings of the lower court.

The statute fixing fees for curators is somewhat different from the statutes with reference to administrators' and executors' fees, because the statutes with reference to the curator expressly provide that the court shall decide what will be just and reasonable compensation for the services, and allow him that amount.

There is no dispute about the law in this case. The finding of the trial court settled the facts, and we think that the findings of fact by the court are sustained by the evidence, and the judgment is therefore affirmed.