## MIDYETT *v.* KERBY.

### Opinion delivered May 28, 1917.

1. COURTS—POWER OVER OWN JUDGMENTS.—Courts of record possess the inherent power to control their judgments during the term at which they are rendered.
2. JUDGMENTS—MAY BE VACATED, WHEN.—A judgment may be vacated during the term at which it was rendered without notice to the parties.
3. ORDER NUNC PRO TUNC—WHEN GRANTED.—An order *nunc pro tunc* should be granted on oral testimony alone, only when the same is clear, decisive and unequivocal; it should be of sufficient character and weight to overcome the written memorial.
4. APPEAL AND ERROR—FINDINGS OF CHANCELLOR.—The findings and decrees of chancellors are not reversed on appeal unless contrary to a clear preponderance of the testimony.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*John E. Miller,* for appellant.

1. The court had the power to set aside the former decree. 23 Cyc. 901; 27 Ark. 296; 6 *Id.* 100; 70 *Id.* 312; 107 *Id.* 415. It may be set aside during the term without notice. 23 Cyc. 952. No notice to appellee was necessary. 118 Ark. 497.

2. The testimony shows that the court really set the decree aside during the term, but the order was not entered, and the *nunc pro tunc* order should have been granted. 118 Ark. 497; *Ib.* 593.

*Carmichael, Brooks & Rector,* for appellee.

The court properly refused the petition. The testimony was not clear, satisfactory and convincing, and there were no written memoranda or orders of record on file. 118 Ark. 593; *Ib.* 497. The chancellor's finding is supported by the evidence, or, at least, is not against the preponderance of the evidence. 84 Ark. 429; 92 *Id.* 359. The testimony heard was not competent. 98 Ark. 183.

HUMPHREYS, J. On October 16, 1916, appellant filed a written motion in this case praying that a *nunc pro tunc* decree be entered vacating a judgment rendered in the cause on the 6th day of June, 1913. It was alleged in the motion that prior to the adjournment of the April, 1913, term of court, at which term the judgment was rendered, that the court rendering the judgment made an order vacating it, but through oversight, the vacating order was not entered of record.

Appellee, responding to the motion, denied that an oral order had been made setting aside and vacating the judgment rendered on June 6, 1913.

The chancellor heard evidence *ore tenus* on the issue joined and overruled the motion for an order *nunc pro tunc,* and the case is here on appeal.

Appellant testified that on October 4, 1916, he called, in company with J. R. Linder and Sam J. Crabtree, on the court in his private chambers and requested him to set the judgment aside, but he refused to do so without the consent of the master upon whose report the judgment had been rendered; that Mr. Linder got Mr. Kirtley, the master, in the presence of the court, and the court then said the order might go, and directed Mr. Crabtree to prepare a precedent; that Mr. Crabtree asked him to prepare the precedent, and he got Mr. Tucker to prepare one for him, which he transcribed on the typewriter and mailed to Crabtree, and thought Crabtree had filed it with the court.

Mr. Kirtley said that the court asked him if he would hear the matter again, and he told him he would; that the court did not set the decree aside in his presence; that he got his information from Crabtree that the decree had been set aside; that he afterward took oral testimony, at which time appellant and appellee were present; that the parties seemed to drop the matter, and he had never filed another report, but had recently signed another report prepared by appellant's attorney, contrary to his original report.

W. T. Tucker testified that he prepared a precedent to vacate the original judgment and mailed it to appellant.

J. R. Linder, who was an attorney in the case, stated in response to a question as to whether the court in fact set the decree aside—"Yes, or, at least, authorized him then to go ahead and make more proof, I will say, yes." In response to an inquiry from the court, he stated: "We went and got him (referring to the master), and it was agreed that we reopen the case, and we did reopen the case." Appellee testified he had no knowledge or information that an oral order had been made vacating the judgment of June 6, 1913, and never heard of it until about two months before this motion was filed; that Mr. Crabtree tried to get him to agree to such an order, but he re-

fused to do so; that Mr. Kirtley told him he did not understand that the decree had been set aside, but understood he was empowered to hear additional evidence and file a supplemental report or modify the original report if he desired.

The court made a statement to the effect that he had no recollection of setting the original judgment aside; that his practice was to notify attorneys before vacating decrees; that his impression was that he instructed Mr. Kirtley to take proof and report back to the court if he desired to modify his original finding.

It was disclosed by the evidence that no written motion was filed to vacate the original judgment. No docket entry was made vacating the judgment. No precedent for vacating the judgment was filed. The original judgment remained intact until the present time.

It is impractical to do more than set out the substance of the evidence of each witness in this opinion.

(1) Appellant is correct in his contention that courts of record possess the inherent power to control their judgments during the term at which rendered. 23 Cyc. p. 901; *Underwood* v. *Sledge,* 27 Ark. 296; *Wells Fargo & Co.* v. *W. B. Baker Lbr. Co.,* 107 Ark. 415.

(2) Possessing this inherent power to vacate judgments, it follows that the court may set aside judgments during the term at which rendered without notice to the parties. 23 Cyc. p. 952.

While courts may exercise such power without such notice, it is not a practice to be encouraged.

The sole question then to be determined upon this appeal is whether the court made an order vacating the judgment rendered on June 6, before the expiration of the term at which it was rendered.

(3) Courts should be cautious in rendering *nunc pro tunc* orders and decrees. The power may be exercised upon parol testimony alone, but the evidence should be clear, decisive and unequivocal. It should be of sufficient character and weight to overcome the written me-

morial. *Bobo* v. *State,* 40 Ark. 224; *Liddell* v. *Boden-heimer,* 78 Ark. 364; *Murphy* v. *Citizens Bank,* 84 Ark. 100; *Sloan* v. *Williams,* 118 Ark. 593.

(4)   The evidence in the instant case does not measure up to the standard exacted in the cases referred to. After reading the whole evidence, one is left in doubt as to whether the judgment was actually set aside or whether permission was given only to the master to take further proof and report to the court if he desired to. supplement or modify his original report. At least we are not willing to say that the finding and order of the chancellor was clearly against the preponderance of the evidence. The same chancellor who rendered the original decree considered this motion, therefore his finding is very persuasive. The findings and decrees of chancellors are never reversed on appeal unless contrary to a clear preponderance of the testimony. *East* v. *Key,* 84 Ark. 429; *Carr* v. *Fair,* 92 Ark. 359.

The decree is affirmed.